UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH PANDOLFO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  4:20-cv-00535-AGF |
| | ) |
| EXACTECH, INC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This products liability action is before the Court on Plaintiff Joseph Pandolfo's motion to compel discovery (ECF No. 21) and related motion to compel deposition answers (ECF No. 25).  For the reasons set forth below, the motion to compel discovery will be granted in part and denied in part, and the motion to compel further deposition answers will be denied.

## BACKGROUND

Pandolfo asserts negligence, strict liability, and related claims against Defendants Exactech Inc. and Exactech U.S. Inc. (collectively, "Exactech") arising out of Exactech's design, manufacture, testing, and marketing of its artificial knee replacement system: The Exactech Optetrak System ("Optetrak device").  The Optetrak device consists of at least four components:  (1) a tibial tray, (2) a tibial insert, (3) a femoral component, and (4) a patellar component.  Each component comes in different

1

models that can be interchanged to make up different knee implant configurations, depending on a surgeon's preference and patient's needs.  Specifically, Exactech manufacturers three models of Optetrak tibial trays: (1) a trapezoidal tibial tray, (2) a finned tibial try, and (3) a combination tibial tray.  Likewise, Exactech manufactures two models of Optetrak femoral components: (1) a cruciate retaining ("CR") femoral component, and (2) a posterior stabilized ("PS") femoral component.  Finally, Exactech manufactures two models of tibial inserts to match the corresponding femoral component: (1) a CR tibial insert and (2) a PS tibial insert.[1]

Pandolfo's claims stem from his left total knee replacement surgery on May 5, 2014, in which he had an Optetrak device implanted that consisted of (1) the trapezoidal tibial tray, (2) the PS femoral component, (3) the PS tibial insert, and (4) the "Optetrak 3 Peg Patella Cemented."[2]  Pandolfo alleges that after implantation, he experienced pain, swelling, and other symptoms and that his doctors ultimately concluded that his Optetrak device failed.  On March 12, 2019, Pandolfo had the Optetrak device removed and a new artificial knee device made by another manufacturer implanted.  According to Pandolfo, his doctors concluded that the Optetrak device failed because of aseptic

---

[1] Neither party discusses the different models of Optetrak patellar components, or the similarities or differences in those models.

[2] The name of the patellar component model comes from Pandolfo's complaint.  *See* ECF No. 1 at ¶ 2.  As noted above, the parties do not discuss the different models of Optetrak patellar components in their briefs on the current motion.

2

loosening of the femoral and tibial components; substantial and defective polyethylene wear (including particulate debris of the plastic polyethylene insert found throughout the knee area); and polyethylene wear resulting in loosening of the device around the worn polyethylene insert area.

Pandolfo has propounded discovery requests for information related to other similar incidents involving alleged failures of the Optetrak device. The current dispute stems from Exactech's partial objections to such discovery and, more specifically, Exactech's insistence that such discovery be limited to (1) incidents involving the same model components that were implanted in Pandolfo,[3] and (2) incidents made known to Exactech in the ten years before Pandolfo's May 5, 2014 implant surgery. Pandolfo filed his motion to compel on April 13, 2021, in which he asks the Court to overrule Exactech's objections.

Pandolfo also requested to depose an Exactech designee, pursuant to Federal Rule of Civil Procedure 30(b)(6), and he included among the topics to be addressed other similar incidents involving alleged Optetrak device failures. Exactech asserted similar objections to Pandolfo's notice of deposition as it did to Pandolfo's written

---

[3] Exactech asserts that it has produced records of other similar incidents if those incidents involved at least one of the model components implanted in Pandolfo, even if the other components did not match those implanted in Pandolfo. "So, for example, if an adverse event report involved the same model patella as was implanted in [Pandolfo], but none of the other components (femoral component, tibial insert, or tibial tray), Exactech produced the report." ECF No. 27 at 3.

3

discovery requests, specifically objecting to incidents involving different component models and incidents made known to Exactech after May 5, 2014.  The deposition was scheduled to take place on April 28, 2021.

Pandolfo filed his motion to compel deposition answers related to these topics on April 23, 2021, while his motion to compel discovery was still being briefed.  The parties agreed to and did go forward with the deposition on April 28, 2021, notwithstanding Pandolfo's outstanding motions.  During the deposition, Exactech objected to several questions based on component model type or time period involved but nevertheless permitted the deponent to answer such questions.

In the current motions, Pandolfo asserts that no limitation with respect to component model is warranted because all models are part of the same Optetrak system and contain the same pertinent characteristics, despite minor differences in design.  Specifically, Pandolfo notes that both models of tibial inserts (the PS tibial insert and CR tibial insert) contain the same polyethylene that Pandolfo alleges was defective and, along with other defects, caused his Optetrak device to fail.  According to Pandolfo, Exactech specifically advertises that its proprietary polyethylene inserts are designed to minimize surface damage and wear, and ultimately improve the longevity of the knee prosthesis.  Pandolfo thus contends that incidents involving CR tibial inserts that suffered from substantial polyethylene wear would be relevant to his claims, which allege a similar defect, regardless of the difference in model type.

Pandolfo further asserts that Exactech's May 5, 2014 cut-off date for discovery is improper. Pandolfo asserts that the discovery regarding other similar incidents is relevant to establish not only Exactech's notice of the alleged defects, but also the severity and prevalence of the defects. Pandolfo contends that reports of adverse events made known to Exactech after May 5, 2014 may not be relevant to the issue of notice but is relevant to other issues. For example, Pandolfo notes that one of Exactech's primary defenses in this case is based on the allegedly low failure rate of the Optetrak device. Pandolfo maintains that reports of failures received by Exactech after May 5, 2014 would be relevant to counter that defense.

As to the Rule 30(b)(6) deposition, Pandolfo asserts that he should be granted another deposition of a corporate designee regarding any additional discovery produced as a result of the current motions.

Exactech maintains that its objections are proper and proportionate to the needs of the case. Exactech describes in detail and has provided evidence regarding the differences between its various models of tibial trays and femoral components, asserting that these are not subsequent generations of the same device but entirely different models with different designs and functions. As to tibial inserts, Exactech concedes that both models of tibial inserts contain the same polyethylene. It also appears from the record thus far that the tibial insert is the only component at issue that contains polyethylene. However, Exactech contends that the two models of tibial insert

5

("PS" and "CR") are configured differently, to match their corresponding femoral components.

As to its proposed time limitation, Exactech asserts that the pertinent legal question is whether the product was unreasonably dangerous at the time of sale. Exactech contends that incidents reported to Exactech after Pandolfo's specific components were sold have no bearing on whether Pandolfo's components were defective at the time of sale or whether Exactech had notice of such defect.[4]  Finally, Exactech maintains that production of information relating to any complaint regarding an Optetrak device, with no model type or time limitation, would be unduly burdensome.

Regarding the motion to compel deposition answers, Exactech contends that the motion is now moot because the deposition is complete and Exactech permitted its deponent to answer Pandolfo's questions over its objections. Exactech further asserts that a second deposition would be unduly burdensome and not proportionate to the needs of the case.

## DISCUSSION

Evidence regarding other similar incidents "may be relevant to prove the

---

[4] During the meet-and-confer process, "Exactech offered (as a compromise) to search for and produce adverse event reports for Pandolfo's model components up to his March 12, 2019 knee revision surgery." *See* ECF No. 27 at 9 n.3.  Pandolfo rejected that request because it was conditioned on a model-type limitation.

defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 911 (8th Cir. 2017), *as corrected* (Aug. 14, 2017). "However, admitting similar-incident evidence also threatens to raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative." *Lovett v. Union Pac. R.R.*, 201 F.3d 1074, 1081 (8th Cir. 2000).

Of course, evidence of similar incidents may be discoverable even if it is not ultimately admissible. As both parties note, there is "no black letter rule of law" regarding such discovery disputes in products liability cases, "other than to state that discovery of similar, if not identical, models is generally permitted." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380–81 (8th Cir. 1992). "Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation." *Fine v. Facet Aerospace Prod. Co.*, 133 F.R.D. 439, 441 (S.D.N.Y. 1990) (cited by *Hofer*). "On the other hand, discovery has been denied where the predecessor models did not share pertinent characteristics with the products at issue." *Hofer v. Mack Trucks, Inc.*, 981 F.2d at 381. Thus, "the courts have undertaken a fact specific determination of the extent of the similarities or dissimilarities, and have inquired about the basis for the discovery request." *Id.*

Applying these principles to the present case, the Court concludes that Pandolfo

7

is entitled to the requested written discovery regarding other similar incidents to the extent the other incident involved an Optetrak tibial insert, regardless of whether it was a PS tibial insert or a CR tibial insert.[5]  Exactech concedes that both models of the tibial inserts contain the same polyethylene that Pandolfo alleges suffered from substantial and defective wear.  And Exactech does not assert or explain why any differences in the configuration of the tibial insert would affect potential polyethylene wear.  *See Mt. Carmel Mut. Ins. Ass'n v. CNH Am., L.L.C.*, No. C12-4112-DEO, 2014 WL 6775593, at *4 (N.D. Iowa Dec. 2, 2014) (granting motion to compel regarding other similar incidents involving different models of a combine than the one owned by plaintiff where the plaintiff's product liability claim alleged a defect arising from material used to construct the combine's fuel tank and "[w]hile the shape and location of the fuel tanks may have changed, it appear[ed] that the material used to construct those tanks ha[d] been largely unchanged" over the various combine models).

It may be that, upon further analysis, the other similar incidents involving the CR tibial insert are in fact not substantially similar to Pandolfo's incident that involved the

---

[5]    Although it is not entirely clear from the record, the Court assumes that all of the other similar incidents at issue involved one of these two models of Optetrak tibial insert, regardless of the other components used.  If that is the case, and if Exactech withheld discovery regarding such incident solely on the basis that the component model type differed from that implanted in Pandolfo, Exactech must produce that discovery as a result of this Order.  For example, if Exactech withheld otherwise discoverable documents related to another similar incident because the incident involved a finned tibial tray, and if that incident also involved an Optetrak tibial insert—regardless of whether it was a PS or CR tibial insert—Exactech must promptly produce those documents.

8

PS tibial insert. If so, evidence of those other incidents may not be admissible at trial. But such analysis cannot take place until the related discovery is produced. *See McMahon v. Robert Bosch Tool Corp.*, No. 4:18-CV-583 CAS, 2019 WL 4141027, at *3 (E.D. Mo. Aug. 30, 2019) ("There is a significant distinction between whether evidence of similar incidents is admissible and whether it is discoverable.").

The Court further concludes that Pandolfo is entitled to the requested written discovery regarding other similar incidents made known to Exactech even after Pandolfo's May 2014 surgery but only through March 12, 2019.[6] Exactech correctly notes that reports of other similar incidents received after May 5, 2014 are irrelevant to the issue of whether Exactech had notice of the alleged defect(s) at the time of Pandolfo's surgery. However, evidence of other similar incidents may be relevant to issues other than notice. For example, such evidence may be relevant to counter Exactech's proclaimed defense based on the device's low failure rate.

Although the Court will grant in part Pandolfo's motion to compel written discovery, as set forth above, it will deny Pandolfo's motion to compel a further Rule 30(b)(6) deposition at this time. Pandolfo agreed to go forward with the April 28, 2021

---

[6] The Court will deny Pandolfo's request for an open-ended time frame; rather, the Court believes that the March 12, 2019 cut-off date (the date of Pandolfo's revision knee surgery) proposed by Exactech during the parties' meet-and-confer is reasonable and proportionate to the needs of the case. Because neither party suggests that the design of the applicable device changed over this time, the Court does not believe that further time-related restrictions are required.

9

deposition while his motions to compel were pending, and it appears that, despite counsel's objections, Exactech's corporate designee answered most if not all of Pandolfo's questions. If, after production of any additional discovery required by this Memorandum and Order, Pandolfo believes that a second deposition is required, Pandolfo must first meet and confer with opposing counsel and attempt to reach agreement on the scope of such a deposition. If the parties are unable to reach agreement and if Pandolfo wishes to file a motion for leave to compel such a deposition, Pandolfo must demonstrate in that motion why a further deposition is needed and how such a deposition will be carefully tailored in both time and scope to address only the additional discovery provided.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel discovery is **GRANTED in part and DENIED in part**, as set forth above. ECF No. 21.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel deposition answers is **DENIED**. ECF No. 25.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of May, 2021.